2007 OK CIV APP 66

**ZINC CORPORATION OF AMERICA and Ace American Insurance Company, Petitioners,**

v.

**Naomi REEDER, and The Workers' Compensation Court, Respondents.**

**No. 103,182.**

Court of Civil Appeals of Oklahoma, Division 2.

March 28, 2007.

Rehearing Denied May 4, 2007.

Certiorari Denied July 3, 3007.

Donald A. Bullard, Bullard & Associates, Oklahoma City, OK, for Petitioners.

W.E. Sparks, Tulsa, OK, for Respondents and Victor R. Seagle, Kelly M. Greenough, Tulsa, OK, for National Zinc and Compsource Oklahoma.

JANE P. WISEMAN, Judge.

¶ 1 Zinc Corporation of America and Ace American Insurance Company appeal from an order of a three-judge panel of the Workers' Compensation Court which affirmed an order of the trial court awarding death benefits to Naomi Reeder (Claimant). The issue on appeal is whether the three-judge panel's order is supported by competent evidence. Upon review of the record and applicable law, we find that the order is so supported and affirm the decision.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Claimant's husband, Louis Reeder, began working for National Zinc Company (National Zinc) in 1960. During the 1960s and until 1976, he worked in the furnace area. During this time, he wore aprons, shoe fittings and gloves made with asbestos materials. In 1976, National Zinc ceased operating the furnace. After National Zinc shut down the furnace, Louis began working in the maintenance department. In 1982, Louis began working in the leaching and purification department, first as a utility man and then in the waste water department from September 1993 until his retirement in June 1994. In 1987, Zinc Corporation of America (Employer) purchased the plant at which Reeder worked.

¶ 3 On December 3, 1996, Claimant filed a Form 3–A with the Workers' Compensation Court requesting death benefits. Louis died on January 13, 1996, from lung cancer, which

Claimant alleged was caused by his exposure to asbestos in the workplace. Louis' death certificate listed his cause of death as respiratory failure caused by malignant pleural mesothelioma. In its answer, Employer denied that Louis was its employee at the time of the alleged injury and that Louis sustained an accidental injury or occupational disease arising out of and in the course of his employment with Employer.

¶ 4 On September 22, 1997, Claimant filed an amended Form 3–A in which she named as Louis' employer "Zinc Corp. of America and National Zinc Company." In June 1998, Claimant filed a motion to add parties and listed the additional parties as the State Insurance Fund and National Zinc. However, on September 15, 2003, the trial court dismissed National Zinc and its insurer from Claimant's claim for compensation.

¶ 5 After trial, the trial court awarded death benefits to Claimant. It stated,

"that on MAY 1, 1995, the deceased, LOUIS REEDER, was in the employ of [Employer], engaged in an occupation subject to and covered by the provisions of the Workers' Compensation Act of the State of Oklahoma; and that on said date LOUIS REEDER suffered occupational disease as a result of deceased's employment with [Employer], from and as a result of which the deceased died on JANUARY 13, 1996."

A three-judge panel affirmed the decision of the trial court.

¶ 6 Employer appeals.

## STANDARD OF REVIEW

■ ¶ 7 A review of the three-judge panel's "factual findings is governed by the any-competent-evidence standard." *Heat Transfer & Equip. v. Cauthon,* 2004 OK 80, ¶ 5, 100 P.3d 722, 724. We review contested issues of law *de novo. Id.* In the *de novo* review, we will exercise "plenary, independent authority giving no deference to the lower court's decision." *Id.*

## ANALYSIS

¶ 8 Employer advances three propositions of error on appeal: (1) the trial court erred in dismissing National Zinc as a party; (2) the trial court erred in determining the admissibility of the report of Claimant's medical expert; and (3) the order of the three-judge panel is not supported by any competent evidence.

### 1. Dismissal of National Zinc

■ ¶ 9 When Louis began working at the zinc plant, National Zinc was the owner. According to Employer, it purchased the plant from National Zinc in 1987. Employer claims that Louis was not injuriously exposed to asbestos on each of at least 60 days while he was employed by Employer. Employer cites 85 O.S. Supp.2006 § 11(B)(4) in support of its contention that the trial court should not have dismissed National Zinc as a party to this compensation claim.

¶ 10 Title 85 O.S. Supp.2006 § 11(B)(4)[1] provides the following:

Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier; provided, however, that in the case of silicosis or asbestosis, the only employer and insurance carrier liable shall be the last employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide (SiO 2) dust on each of at least sixty (60) days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer.

Employer asserts that this portion of § 11(B)(4) referring to asbestosis applies to this claim for compensation, thus requiring Claimant to show that Louis was exposed to harmful quantities of silicon dioxide dust on

1. The substantive portion of this subsection has remained virtually unchanged since it was added in 1953. *See* 85 O.S. Supp.1953 § 11 (3).

each of at least 60 days while employed by Employer. We disagree.

¶ 11 Claimant's medical expert concluded, and the trial court found, that Louis suffered from an occupational disease, mesothelioma, and its findings were affirmed by the three-judge panel. A recent case from the Oklahoma Court of Civil Appeals instructs us that the provision of the Workers' Compensation Act dealing with asbestosis does not encompass all asbestos-related diseases such as mesothelioma.

¶ 12 In *Fautheree v. McCaffrey*, 2006 OK CIV APP 94, 141 P.3d 570, an employee was last exposed to asbestos in the workplace in 1986 and died of abdominal mesothelioma in 1998. The employee's widow retained a law firm to file a workers' compensation claim. The firm filed a claim on the widow's behalf in 1999. The Workers' Compensation Court dismissed the action on the ground the widow failed to request a hearing within three years as required by law. The widow did not appeal the decision, but instead filed a legal malpractice lawsuit against the firm and the individual lawyers, claiming that the firm and its lawyers had allowed the statute of limitations to pass. The trial court in the malpractice lawsuit granted summary judgment in favor of the firm and the lawyers.

¶ 13 The Court of Civil Appeals affirmed the lower court decision, finding that the widow would not have been able to win her lawsuit for malpractice because she was required to file her claim within two years of the last exposure to the workplace hazard. *Id.* at ¶ 4, 141 P.3d at 572. The Court noted that the Act permits an exception to the two-year statute of limitation and stated the following:

> Title 85 O.S. Supp.1986 § 43(A) permits an exception to filing: "... in the case of asbestosis, silicosis or exposure to nuclear radiation causally connected with employment, a claim may be filed within two (2) years of the date of last hazardous exposure or within two (2) years from the date said condition first becomes manifest by a symptom or condition from which one learned in medicine could, with reasonable accuracy, diagnose such specific condition, whichever last occurs."

*Id.* at ¶ 5, 141 P.3d at 572 (footnote omitted). The Court explained that mesothelioma is a cancer of the mesothelium, the protective sac around the body's internal organs. *Id.* at ¶ 6, 141 P.3d at 572. The Court noted that the Legislature had not made an exception to the two-year statute of limitation for mesothelioma and explained that "[t]he exception to the two year limitation would not have applied because asbestos-related abdominal cancer is not asbestosis, a lung disease related to asbestos inhalation and a disease granted time dispensation." *Id.* The Court declared that, although the widow requested that the Court read § 43(A) as including asbestos-related diseases, it was "not at liberty to expand the list of diseases to which the exception applies." *Id.* at ¶ 6, 141 P.3d at 572–73.

¶ 14 We agree with the reasoning in *Fautheree*. We are unable to expand the list of diseases to which the statutory exception found in § 11(B)(4) applies. Mesothelioma and asbestosis are not the same disease. Section 11(B)(4) does not list mesothelioma as a disease to which the 60–day exception to the general rule applies. Although both diseases are related to asbestos, if the Legislature had intended the 60–day exception to apply to all asbestos-related diseases, it could have so stated.

¶ 15 We find that there is no requirement that Claimant show that Louis was last exposed to harmful quantities of silicon dioxide dust on each of at least 60 days or more when he was working for Employer. Instead, the general rule for occupational disease should be applied.

¶ 16 Under the general rule, Employer alone is liable without right of contribution from National Zinc if Louis' injurious exposure to the hazards of asbestos occurred while he was employed by Employer. *See* 85 O.S. Supp.2006 § 11(B)(4). Except for cases involving silicosis or asbestosis, the last injurious exposure rule found in § 11(B)(4) "does not have a minimum quantity or quality of exposure before the last employer is liable for the occupational disease." *Heat Transfer & Equip.*, 2004 OK 80 at ¶ 9, 100 P.3d at 725. It is undisputed that asbestos remained on

Employer's premises after it purchased the plant from National Zinc. Although Louis no longer worked in the furnace after Employer purchased the plant, we cannot say that the conclusion by the trial court that he was still injuriously exposed to asbestos is not supported by competent evidence.

¶ 17 Employer hired a company to remove asbestos materials from its premises in 1997. Asbestos was removed from areas in the plant other than the furnace, including the main office buildings, where the employees were required to pick up their paychecks. Claimant also presented testimony that Louis was exposed to asbestos outside of his exposure during the time spent working in the furnace. One of Louis' co-employees, who also worked in maintenance, testified that they were required to replace plumbing and pipe fittings that were covered in "asbestos-type insulation." The same witness also testified that they were required to cut asbestos-containing materials to make steam flanges. The abatement report prepared by the abatement company revealed that asbestos was removed from areas other than the furnace.

¶ 18 We find that the trial court did not err in dismissing National Zinc as a party to Claimant's compensation claim. The evidence shows that asbestos remained after Employer bought the plant. The trial court did not err in finding that Employer alone is responsible for Louis' occupational disease.

*2. Admissibility of Medical Expert's Report*

■ ¶ 19 We also conclude that the trial court did not err in admitting the report of Jerry D. McKenzie, M.D. Of Louis' work history, Dr. McKenzie stated:

> From October 1960 until May 1994, Mr. Reeder worked for National Zinc Company in Bartlesville, Oklahoma. He was a furnace worker, and worked on old furnaces. In addition, he worked as a leach controller, utility operator, maintenance person, and in melting and casting. Throughout the claimant's employment in Bartlesville, he was exposed to asbestos in his gloves, shoe coverings, and aprons.

In his report, Dr. McKenzie also reviewed and summarized Louis' medical history in relation to the mesothelioma. He stated, "After reviewing the medical records concerning Mr. Reeder, it is my opinion, that his malignant mesothelioma was, within a reasonable degree of medical certainty, caused by asbestos exposure."

■ ¶ 20 Employer objected to the competency of Dr. McKenzie's report. "[A]n objection to the 'competency' of a medical report is directed to the exhibit's admissibility on hearsay or other legal grounds." *Lacy v. Schlumberger Well Serv.,* 1992 OK 54, ¶ 6, 839 P.2d 157, 159. Employer claims the report was not admissible because it did not meet the standards for expert medical testimony. Employer refers this Court to Rule 20 of the Workers' Compensation Court Rules and asserts that Dr. McKenzie's report does not meet the standards set out in Subsection B of this rule. Subsection B provides:

> The Workers' Compensation Court, recognizing that it is costly and time-consuming to have physicians appear at trial to testify, encourages the production of medical evidence by verified or declared written medical reports. The Court encourages but does not require the report to include the following information, as applicable:
>
> 1. A complete history of the claimant, including all previous relevant or contributory injuries with a detailed description of the present injury.
>
> 2. The complaints of the claimant.
>
> 3. The physician's findings on examination, including a description of the examination and any diagnostic tests and x-rays.
>
> 4. The date and cause of the alleged injury and whether, in the physician's opinion, it is job-related.
>
> 5. The period during which the claimant was temporarily and totally disabled and, if such temporary total disability has ended, the date on which it ended. If temporary total disability continues at the time of the report, the physician should so state.
>
> 6. A finding which apportions the percentage of claimant's pre-existing permanent partial disability, if any.

7. Whether claimant is capable of returning to light duty or full duty work, and what physical restrictions, if any, should be imposed on the claimant, either temporarily or permanently.

8. Whether the claimant has reached maximum medical improvement.

9. Whether the claimant is able to return to the claimant's former employment or is a candidate for vocational rehabilitation.

10. Whether the claimant is in need of continuing medical care, and if so, the type of continuing medical care needed.

11. The existence or extent of any permanent impairment.

12. An apportionment of injury causation.

13. Any other detailed factors upon which the physician's evaluation of permanent impairment is based.

Workers' Compensation Court Rule 20, 85 O.S. Supp.2005, ch. 4, app.

¶ 21 The medical report at issue here contained a history of Louis' medical problems since he first started exhibiting symptoms related to his disease. The history includes the complaints related to his illness, the tests performed by the doctors he visited, and the results of the tests. It further discusses the biopsy, which revealed "tiny needle like crystals within the mesothelioma tumor mass consistent with asbestos exposure." The report noted that Louis had been exposed to asbestos during his employment at the plant. In Dr. McKenzie's opinion, Louis' malignant mesothelioma was caused by asbestos exposure.

¶ 22 Rule 20 does not require a physician's report to contain all the information listed in Subsection B. In fact, most of the factors listed would not apply to a report about Louis' occupational disease because the disease resulted in his death. Factors dealing with apportionment, light duty, medical improvement, and vocational rehabilitation are not relevant.

¶ 23 We cannot say that the trial court erred in admitting the medical report. The report addressed the exposure to asbestos at Louis' place of employment from 1960 to 1994. Louis worked at the same plant for this entire period. The report also contained the diagnosis of malignant mesothelioma and related it to the asbestos exposure.

¶ 24 In *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135, n. 4, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003), the Supreme Court noted, "Asbestos is the only cause of mesothelioma established thus far, although some instances of the disease are not traceable to asbestos." The medical report's link between the asbestos exposure on the job and mesothelioma is supported by widely available scientific evidence. We cannot say that the trial court erred in admitting the medical report given its recitation of facts relating to on-the-job asbestos exposure and its conclusion that this exposure caused Louis' mesothelioma.

### 3. Any Competent Evidence Issue

¶ 25 Finally, we address Employer's claim that the trial court's decision, as affirmed by the three-judge panel, is not supported by competent evidence. It is undisputed that the plant contained asbestos as shown by the fact that Employer was required to pay for the removal of asbestos in 1997. However, Employer claims that Louis was not injuriously exposed to asbestos during his tenure with Employer, but was only injuriously exposed while working for National Zinc. Employer is asserting that Louis' date of last injurious exposure predates his employment with Employer.

¶ 26 Claimant established that asbestos remained within the plant and office buildings after Employer purchased the plant. She claims that Louis' exposure to asbestos, and thus the injurious exposure, continued until his retirement in 1994. In cases involving occupational disease,

[A] claimant may establish a presumptive date of last injurious exposure and, thus, the employer's and insurance carrier's presumptive liability by showing potentially causal conditions or contributory exposure at the employment.... After an employee submits evidence of potentially causal conditions or contributory conditions at the employment, the burden of putting forth

evidence shifts to the employer and insurance carrier. The employer may rebut the presumption by proof (1) that the conditions of the employment could not have possibly caused or exacerbated the disease or (2) that the disease was caused solely by the employment conditions at a previous employment, or for the insurance carrier, the conditions occurred during a time outside of its coverage.... The burden of putting forth evidence then is placed back on the claimant to show that the last exposure caused or contributed to the injury.

*Heat Transfer & Equip.*, 2004 OK 80 at ¶ 13, 100 P.3d at 725–26 (citations omitted). The presumption so created "does not shift the burden of proof from the claimant, but creates a rebuttable presumption which shifts the burden of producing evidence." *Id.* at ¶ 14, 100 P.3d at 726.

¶ 27 Claimant presented evidence that asbestos remained at the plant until after Louis' retirement and that Louis was in the areas containing asbestos, at least on occasion, after the plant changed hands. We reiterate that the last injurious exposure rule found in § 11(B)(4) "does not have a minimum quantity or quality of exposure before the last employer is liable for the occupational disease." *Id.* at ¶ 9, 100 P.3d at 725. In response, Employer failed to show that Louis' exposure after Employer purchased the plant "could not have possibly caused or exacerbated the disease" from which Louis suffered.

¶ 28 Competent evidence in the record supports Claimant's assertion that Louis was exposed to asbestos after Employer purchased the plant, that his mesothelioma was caused by asbestos exposure, and that such exposure did not end until he retired. We conclude that the decision of the Workers' Compensation Court that Louis suffered from an occupational disease and that the date of his last injurious exposure occurred while employed by Employer is supported by competent evidence.

## CONCLUSION

¶ 29 We find that the trial court neither erred in dismissing National Zinc as a party nor in admitting Dr. McKenzie's medical re-

port. We further find that the decision of the three-judge panel is supported by competent evidence. Accordingly, we sustain the order of the three-judge panel.

¶ 30 SUSTAINED.

RAPP, C.J., and FISCHER, P.J., concur.