ALTENBERND, Judge.
 

 Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company (Fidelity) appeal a judgment declaring that Fidelity, and not Florida Mutual Insurance Trust (FMIT), is the workers’ compensation carrier responsible for paying benefits for an occupational disease suffered by an employee of Polk County. We conclude that the trial court erred because it did not apply the provisions of section 440.151(5), Florida Statutes (1999),
 
 [1]
 
 that clearly make FMIT responsible for this claim.
 

 
 *384
 
 I. The Workers’ Compensation Claim
 

 Zola Ann Ross worked as a registered nurse for Polk County at the Polk County General Hospital from 1981 to May 1994. During her employment, she was exposed to Hepatitis C. She was diagnosed with the disease in 1999 but did not become disabled until April 18, 2000. She filed a claim for benefits in 2002, when she was no longer employed by Polk County. Initially, Polk County contested the claim on the theory that she failed to file it in a timely manner. The judge of compensation claims ruled against Polk County, and the First District affirmed the order, requiring the payment of benefits.
 
 Polk County Bd. of County Comm’rs v. Ross,
 
 911 So.2d 854 (Fla. 1st DCA 2005).
 

 Polk County then filed this action seeking a determination of which insurance carrier provided coverage for the claim. In its complaint, it explained that Fidelity provided this statutory coverage for the period from January 1, 1997, to January 1, 2002. FMIT provided the coverage for the period October 1, 1993, to September 30, 1994. Although Polk County’s complaint did not allege that it preferred one carrier to the other, in the trial court it clearly sought to place the responsibility on Fidelity. Apparently, Polk County’s financial liability is less if Fidelity is the carrier with exposure for the claim.
 

 The parties filed motions for summary judgment because the critical facts necessary to resolve this coverage dispute are not in conflict. Relying on language in
 
 Sunshine Truck Plaza/Camp Oil Co. v. Tucker,
 
 395 So.2d 265 (Fla. 1st DCA 1981), the trial court decided that the carrier on the risk when the right to compensation accrued was liable to pay these benefits. Accordingly, it entered a declaratory judgment requiring Fidelity to be responsible for this claim. Fidelity appeals that ruling.
 

 II. The Statutory Provisions Governing Workers’ Compensation Coverage For Occupational Diseases
 

 Occupational diseases present a special challenge for workers’ compensation law because it is common for these diseases to manifest themselves or become symptomatic and capable of diagnosis months or years after the exposure to the work conditions that brought on the disease. Moreover, the diseases are likely to be caused by long-term exposure to conditions, making it difficult in some industries to pinpoint the employer or employers who should be responsible for paying a workers’ compensation claim for a worker’s occupational disease. It is even more difficult to place responsibility on one or more insurance carriers when employers shift their insurance coverage from one company to another on a regular basis.
 

 From a policy standpoint, these claims also present complex issues. An ideal public policy would encourage employers to minimize the risks of occupational diseases. It would also give employees the ability to make a claim against an employer and an insurance company that are still solvent even if the exposure causing the disease occurred years ago. Likewise, an ideal public policy would require employers to pay their fair share of such claims, but would not result in a system that is inordinately complex to administer. Finally, it would not discourage employers from hiring employees who may have been exposed at earlier jobs to conditions that
 
 *385
 
 could result in future occupational diseases. These policy issues do not lend themselves to a single perfect solution.
 
 [2]
 

 Given the competing policy issues, it is not surprising that many states adopted statutory solutions to address these issues. Florida is one of a sizable group of states that adopted a version of the “last injurious exposure” rule.
 
 [3]
 
 Under this rule, in general, the employer and the insurance company on the risk at the moment of the last injurious or harmful exposure to the occupational disease are responsible for providing workers’ compensation benefits even if the disease manifests itself years later when the worker is employed in some other industry.
 

 The relevant Florida statute, section 440.151, entitled “Occupational Diseases,” is somewhat lengthy. For purposes of the issue on appeal, the critical subsection of section 440.151 is subsection (5). It provides:
 

 Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be hable therefor, without right to contribution from any prior employer or insurance carrier....
 

 Thus, the statute clearly provides that the employer who was the employer when the employee “was last injuriously exposed” is the employer who “alone” is liable for the workers’ compensation claim. Likewise, the statute clearly provides that the insurance carrier “on the risk when such employee was last so exposed” shall be the carrier that is “alone” liable to pay the claim.
 

 III. Applying Section 440.151(5) to Determine the Insurer Responsible for the Employee’s Claim for Benefits
 

 In this case it is undisputed that Ms. Ross was last injuriously exposed to hepatitis in May 1994 when FMIT was the insurance carrier. Indeed, Fidelity did not become the insurance carrier for Polk County until after Ms. Ross ceased to be an employee. Thus, the trial court did not comply with the clear and unambiguous language of this statute.
 

 The trial court’s confusion was caused by the parties’ unwarranted reliance on subsection (1) of the statute and on language in the
 
 Sunshine Truck Plaza
 
 decision. Subsection (1) contains provisions
 
 *386
 
 limiting and explaining the compensability of a claim made by the employee against the employer. It states, in part:
 

 [T]he disablement or death of an employee resulting from an occupational disease as hereinafter defined shall be treated as the happening of an injury by accident, notwithstanding any other provisions of this chapter, and the employee or, in case of death, the employee’s dependents shall be entitled to compensation as provided by this chapter, except as hereinafter otherwise provided....
 

 Both Fidelity and Polk County misapply this language in an effort to make the trigger for coverage on this workers’ compensation claim become the date when the disease manifested itself rather than the date of last exposure. The fact that the legislature is treating an occupational disease as the equivalent of an injury or accident for purposes of compensability between the employee and the employer does not answer the questions of which employer and which insurance carrier must be responsible for the claim. For example, in this case, the employee became disabled in April 2000 and the trial court used this date to establish the “date of accident.” The date of disability for an occupational disease may be used as the date of accident for purposes of timing the employee’s claim for benefits, but that does not resolve the issue of which employer or which insurance cander is responsible for the claim. Those issues are squarely resolved in subsection (5) under a public policy based on the date of last exposure, not on the date of manifestation, the date of diagnosis of the disease, or the date of disability.
 

 In
 
 Sunshine Truck Plaza,
 
 a woman worked at the Sunshine Truck Plaza, where she was exposed to detergents and the heat from a grill. 395 So.2d at 266. She was employed between December 1976 and April 1979.
 
 [4]
 

 Id.
 
 at 265. She developed serious problems with dermatitis.
 
 Id.
 
 at 265-66. The symptoms apparently first manifested in February 1978 but “did not become disabling until December 1978.”
 
 Id.
 
 at 266. She continued to work and continued to be exposed to the detergents until April 1979.
 
 Id.
 
 Sunshine Truck Plaza changed insurance carriers in February 1979.
 
 Id.
 
 The First District held that the first insurance carrier was liable for medical bills and temporary disability payments for the period that it was on the risk and that the second insurance carrier was liable for all payments thereafter and in the future.
 
 Id.
 
 at 266-67.
 

 There is nothing inconsistent with that holding and our holding today. Indeed, the
 
 Sunshine Truck Plaza
 
 opinion discusses section 440.151(5) and explains:
 

 This language is plainly intended to mean that the liability of the carrier on the risk when the claimant is last exposed to the hazards of the disease is not limited to injury from that exposure alone, but should pay all treatment or disability, temporary or permanent, to which that exposure contributes along with prior exposures. That carrier should be liable for the entire percentage of disability or wage-earning loss, if any, without right of contribution from any prior carriers for prior exposures. The legislature by this section was attempting to avoid the situation where, for example, after long-term exposure, the claimant has an occupational disease resulting in an 80% permanent partial disability. During this long-term exposure, there may have been several carri
 
 *387
 
 ers on the risk. Rather than attempt to apportion on the basis of the number of years each carrier was on the risk, the legislature has determined that the last carrier should be responsible for all compensation.
 

 Id.
 
 at 266.
 

 The facts in
 
 Sunshine Truck Plaza
 
 involve an employee who, during her period of employment, manifested an initial illness that over time became a more serious occupational disease. Polk County and FMIT rely extensively on one sentence in the
 
 Sunshine Truck Plaza
 
 opinion. That sentence states: “The carrier on the risk when the right to compensation accrues or the medical bills are incurred is liable for all benefits which were then due and owing during the period of its risk.”
 
 Id.
 
 However, the court wrote the sentence in the context of an illness that occurred over a period of employment; it was not intended to override subsection (5) or to apply when the occupational disease manifests itself years after the period of employment.
 

 The First District further explained the
 
 Sunshine Truck Plaza
 
 decision in
 
 Eastern Airlines, Inc. v. Crittenden,
 
 596 So.2d 112 (Fla. 1st DCA 1992). In
 
 Crittenden,
 
 the court discussed the sometimes confusing distinction between an illness during employment and an occupational disease as defined in section 440.151.
 
 Id.
 
 at 112-13. It explained:
 

 Occupational diseases are governed by section 440.151, Florida Statutes, and the statute creates several distinctions between occupational diseases and other injuries. Section 440.151(5), Florida Statutes, establishes that the employer and carrier at risk when the claimant is last injuriously exposed to the hazards of an occupational disease shall alone be liable for the payment of compensation, without any contribution from a prior employer or carrier. It is the last injurious exposure, and not the initial development or occurrence of the disease, which is crucial in this regard.
 

 Id.
 
 at 113 (citations omitted). It also explained the limited context of the holding in
 
 Sunshine Truck Plaza
 
 by stating:
 

 Like the present case,
 
 Sunshine Truck
 
 involved different carriers at risk and multiple exposures which produced an occupational disease with multiple periods of disability. In
 
 Sunshine Truck,
 
 section 440.151(5) was applied to each carrier insofar as it was at risk at the time of the last injurious exposure with regard to each period of disability. The earlier carrier was thus responsible for the benefits which accrued in connection with its period of risk, and the subsequent carrier was responsible for the benefits which accrued in connection with the subsequent injurious exposures when it was the carrier at risk.
 

 Id.
 
 Thus, it is obvious that the discussion in
 
 Sunshine Truck Plaza
 
 was not intended to apply in a case of an occupational disease that first manifests itself after the period of employment had ended.
 

 Polk County and FMIT also suggest that the last exposure rule only applies in cases involving long-term exposure to conditions that cumulatively result in a disease. While it is certainly true that the rule applies in such cases, the definition of an occupational disease in section 440.151(2) is not so limited. The employee’s hepatitis in this case may not be the result of cumulative exposure, but it is by definition an occupational disease resulting from a risk of infection that was ongoing at all times when she worked at Polk County General Hospital. If that were not the case, Polk County would not have been found responsible in the underlying workers’ compensation claim.
 

 
 *388
 
 Accordingly, we conclude that this case is resolved by the clear language of section 440.151(5). We reverse and remand for the entry of a final summary judgment in favor of Fidelity and for a judgment requiring payment of this claim by FMIT.
 

 Reversed and remanded.
 

 CRENSHAW, J., and GALLEN, THOMAS M., Associate Senior Judge, concur.
 

 [1]
 

 . The parties did not cite the applicable year of the statute in their submissions to this court. We use the year 1999 because it is the year of the statute in effect on April 18, 2000,
 
 *384
 
 which the trial court identified as the date the employee became disabled for purposes of the running of the Occupational Disease Statute. We note that the 1994 and 1999 statutory provisions at issue in this case are identical, 1994 being the year in which the claimant was last injuriously exposed to the disease.
 

 [2]
 

 . A similar set of issues arose in the context of asbestos claims against manufacturers and their liability insurance carriers. The litigation addressing insurance coverage for these claims considered various "triggers” for coverage.
 
 See
 
 Stephen V. Nielsen,
 
 The "Second Wave" of Asbestos Litigation (Property Damage): Who Writes the Check Now?,
 
 7 Cooley L. Rev. 491, 493-95 (1990). Some insureds and insurance companies argued that coverage was invoked based on the dates of exposure to the asbestos-containing product by the plaintiff.
 
 Id.
 
 at 494. Others argued that it was invoked on the date that the plaintiff manifested an asbestos-related disease.
 
 Id.
 
 at 494-95. In rulings designed to give maximum benefit to the insureds, some states even adopted a "triple trigger” solution for this issue.
 
 See, e.g., Zurich Ins. Co. v. Raymark Indus., Inc.,
 
 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150, 161 (Ill.1987) (adopting a triple trigger for coverage including when the claimants were exposed to asbestos, suffered from asbestos-related sickness, or suffered from disease caused by asbestos).
 

 [3]
 

 .
 
 See, e.g.,
 
 Ala.Code § 25-5-116 (2008);
 
 Edmonds Indus. Coatings, Inc. v. Lolley,
 
 893 So.2d 1197 (Ala.Civ.App.2004); Colo.Rev. Stat. § 8-41-304(1) (2008);
 
 Univ. Park Care Ctr. v. Indus. Claim Appeals Office of State of Colorado,
 
 43 P.3d 637 (Colo.Ct.App.2001); Okla. Stat. Ann. tit. 85, § 11(B)(4) (2008);
 
 Zinc Corp. of Am. v. Reeder,
 
 164 P.3d 1132 (Okla.Civ.App.2007);
 

 [4]
 

 . She had a break in employment between July 1977 and January 1978 that would not appear to affect the court’s analysis.